IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY COTTON,<br>AIS #135533,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LT. NIEVES, *et al.*,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)   CASE NO. 2:19-CV-359-MHT-CSC<br>)<br>)<br>)<br>) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Larry Cotton, an indigent state inmate, initiated the instant 42 U.S.C. § 1983 action on May 21, 2019. Upon the review of the complaint, the Court issued an order requiring the Plaintiff to file an Amended Complaint. (Doc. 8). In his Amended Complaint, the Plaintiff alleges that from October 25, 2016, through September 30, 2019, in part because of overcrowding, he was denied adequate access to the prison law library, which prevented him from filing a timely Rule 32 petition. He also alleges that again in part due to overcrowding the Defendants have been deliberately indifferent to his safety needs. Specifically, he claims the following:

> I have been in fear of my life due to all the violence in Alabama prisons. I have been under the infliction of emotional distress and mental stress that have been inflicted upon me, Mr. Cotton, where I have seen prisoners stab each other for no reason. I have seen prisoners hang themselves and I have seen inmates raped and beaten. I have been under four feet from some of the acts.

(Doc. 9 at pp. 22-23). The named Defendants in this action are Governor Kay Ivey, Commissioner Jefferson Dunn, Sergeant Joshua C. Cooper, Sergeant Dejour R. Knight, Lt. Bradley L. Walker, Officer Mildred D. Jordan, Captain Myers, Captain Pamela R. Harris, Warden Kenneth Drake, Lt. Michael O. Calhoun, Warden Karla W. Jones, Warden Michael Strickland, Warden Gwendolyn

Givens, Sergeant Josiah C. Haggins, Assistant Warden Eric Evans, and former ADOC officers, Clarence J. Hicks, Elijah R. Rouse, and Victor Nieves. (Doc. 9 at p. 2).

The Defendants filed a special report (Doc. 33, Exs.1-22), which included relevant evidentiary materials in support of these reports, specifically affidavits which addressed the claims presented by Cotton.  In these documents, the Defendants deny they acted with deliberate indifference to Cotton.  After reviewing the special reports and exhibits, the court issued an order on April 9, 2020, requiring Cotton to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  This orders specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 36 at p. 2).

Cotton filed a response to this order. (Doc. 39).  In his response, he alleges that the law library was not open when his schedule made it possible for him to go and as a result he was not able to file a timely Rule 32 Petition. (Doc. 39-1 at p. 6).  However, he attaches an order from the Circuit Court of Jefferson County dated April 27, 2018, acknowledging the filing of a Petition for Writ of Habeas Corpus by Plaintiff and treating it as a Rule 32 Post Conviction Petition and setting time for the state to respond. (Doc. 39-1 at p. 18). He also attached affidavits from various inmates relating their exposure to violence by other prisoners while housed at Ventress. (Doc. 39-1 at pp. 1-17).  However, neither in his Complaint nor in his Response does the Plaintiff claim that he has

personally suffered any attacks or threats by other prisoners or guards from October 25, 2016, through September 30, 2019, while he was housed at Ventress. Pursuant to the directives of the order entered on April 9, 2020, the court now treats the Defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving

party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Moore's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Cotton has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

### III. DISCUSSION

At the outset the Court notes that in spite of its instructions to the Plaintiff by previous Order (Doc. 8), the Plaintiff fails make any specific claims concerning unconstitutional actions taken by the Defendants against him in his Amended Complaint. (Doc. 9). Rather, in both his Amended Complaint and Response to the Defendants' Special Report, he continues to complain generally about the overcrowding in Alabama's prisons, its effect on the hours the law library is

4

open and the alleged increased violence at Ventress against prisoners other than himself. (Doc. 9 at p. 3 and Doc. 39 at pp. 1-12). Accordingly, the Court concludes summary judgment is due to be granted in favor of the Defendants for several reasons, which are enumerated hereafter.

## A. STANDING

First, to the extent the Plaintiff seeks to present claims on behalf of other inmates, he lacks standing to raise claims for alleged violations of other inmates' constitutional rights.

> Standing involves two aspects. The first is the minimum "case or controversy" constitutional requirement of Article III. *Saladin [v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir. 1987)]. "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin,* 812 F.2d at 690, citing *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472 (1982); *Warth v. Seldin,* 422 U.S. 490, 499 (1975). If any element is lacking, a plaintiff's claim is not viable. In addition, the Supreme Court has established several requirements based on prudential considerations. *Saladin,* 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has also stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations.... Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties").

> To the extent the instant complaint seeks to assert claims relative to conditions of confinement [or actions] to which other inmates have been subjected at correctional facilities throughout the Alabama prison system, Plaintiff lacks standing to assert the constitutional rights of other persons. *Saladin, supra.; Allen v. Wright,* 468 U.S. 737, 751 (1984). The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests of another person. With respect to the claims arising from alleged violations of other inmates' constitutional rights, Petitioner is not "asserting his ... own legal rights and interests [but] rather ... the legal rights and interests of third parties." *Saladin,* 812 F.2d at 690. These claims, therefore, entitle Plaintiff to no relief.

*Charest v. Riley*, No. 2:10-CV-51-MHT, 2010 WL 797156, at *2–3 (M.D. Ala. Mar. 8, 2010). Thus, any claims brought by Plaintiff in this action for violations of other inmates' constitutional rights are due to be dismissed because the Plaintiff lacks standing to pursue those claims.

**B.  DELIBERATE INDIFFERENCE**

Second, the Court concludes that the Plaintiff fails to state a claim for general prison overcrowding and understaffing as a violation of his constitutional rights. Indeed, only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Prison conditions which may be "restrictive and even harsh, are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Id*. Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency." *Id*. at 345–46. Although "[t]he Constitution 'does not mandate comfortable prisons' . . . neither does it permit inhumane ones[.]" *Farmer*, 511 U.S. at 832 (quoting *Rhodes*, 452 U.S. at 349). Thus, a prisoner's conditions of confinement are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

Further, a prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984));

6

*Helling*, 509 U.S. at 31–32. For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289–90 (11th Cir. 2004). In order to violate the Eighth Amendment, the risk of harm from the condition must be "so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk." *Id.* (quotation marks and citation omitted) (emphasis in original). As with deliberate indifference claims, to demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834.

Besides the objective component, the Plaintiff must satisfy a subjective prong by showing that the Defendants acted with deliberate indifference. *Chandler,* 379 F. 3d at 1289-90. This does not require that the prison official purposefully acted to cause harm, but it does involve something beyond mere negligence. *Id.* Indeed, the Defendants must know of and disregard an "excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* Nowhere in any of his filings does the Plaintiff allege that he has been the victim of any violent attack by a fellow prisoner or guard. Nor does he allege that any Defendant knew a risk of serious harm existed to him and disregarded the risk. Rather, he claims that due to the violence he has witnessed at Ventress he has suffered emotional distress because he fears for his life. (Doc. 9 at pp. 22-23). Thus, court concludes the allegations made by the Plaintiff in this case do not rise to the level required by law to maintain this action for deliberate indifference to his safety.

C.  ACCESS TO COURTS

Next, the law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*.  Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349.  In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no . . . right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of **access to the courts**. . . .  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined *Bounds* did not require "that the State . . . enable the prisoner to **discover grievances**, and to **litigate effectively** once in court. . . .  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires." *Id*. at 354 (emphasis in original).

The Court similarly determined that the mere claim of a systemic defect, without a showing of actual injury, did not present a claim sufficient to confer standing.  *Id*. at 349. Moreover, Lewis emphasized that a Bounds violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "Bounds . . . guarantees no particular methodology but rather the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate . . . shows that an actionable claim

of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . . [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts — a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "scrupulously respect[] the limits on [its] role, by not . . . thrust[ing] itself into prison administration and instead permitting [p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements." *Id*. at 363 (internal quotations and citation omitted).

  Cotton presents only a conclusory allegation of a constitutional violation and fails to allege any shortcomings with respect to the legal access provided to him during his confinement at Ventress which actually adversely affected his efforts to file his Rule 32 Petition in state court. Although Cotton alleges that his schedule prevented him from being able to access the law library when it was open, he has not alleged nor shown that the lack of access in any way inhibited his preparation of legal documents, filing of pleadings or pursuing his Rule 32 relief in state court. To the contrary, he attaches to his Response an order from the Circuit Court of Jefferson County dated

April 27, 2018, acknowledging the filing of a Petition for Writ of Habeas Corpus by Plaintiff and treating it as a Rule 32 Post Conviction Petition and setting time for the state to respond. (Doc. 39-1 at p. 18). Cotton has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the capability of pursuing his Rule 32 relief in state court or in any other court. Hence, Cotton does not establish he suffered the requisite injury, *see Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary judgment on the legal access claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show any actual injury); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (An inmate is entitled to no relief on an access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage.").

### D. RESPONDEAT SUPERIOR

Finally, to the extent the Plaintiff alleges that Defendants Governor Kay Ivey, Commissioner Jefferson Dunn, Warden Michael Strickland, and Warden Gwendolyn Givens are liable to him in their supervisory positions based on a theory of respondeat superior, those claims also must fail. The law is well established; supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability. *See, Belcher v. City of Foley*, 30 F.3d 1390, 1396-97 (11th Cir. 1994).

Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official

"can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for the alleged unconstitutional conditions could attach to Defendants Governor Kay Ivey, Commissioner Jefferson Dunn, Warden Michael Strickland, and Warden Gwendolyn Givens only if either "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Indeed, a causal connection maybe established either when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or when (2) "a supervisor's custom or policy. . . result[s] in deliberate indifference to constitutional rights" or when (3) "facts support an inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (Citations omitted). Based upon the Defendants' undisputed affidavit testimony and the Court's careful review of the Plaintiff's allegations, the Court concludes that the Plaintiff's claims against the named supervisory Defendants Governor Kay Ivey, Commissioner Jefferson Dunn, Warden Michael Strickland, and Warden Gwendolyn Givens fail because the Plaintiff has not demonstrated their personal involvement in the general overcrowding and understaffing at Ventress which he claims have affected him, nor has he alleged any facts

demonstrating the necessary causal connection between them and their subordinates. Accordingly, any claims against the supervisory Defendants also fail for the reasons stated above.

For the above stated reasons, it is the RECOMMENDATION of the Magistrate Judge that

1. The Defendants' motion for summary judgment (Doc. 33) be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. Costs be taxed against the Plaintiff.

On or before **July 1, 2022**, the plaintiff may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which he objects. Frivolous, conclusive or general objections will not be considered by the District Court. The plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 17th day of June, 2022.

    /s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE